### ALBERT BENSON v. STATE.

No. A-3837.    Opinion Filed Jan. 19, 1922.
(203 Pac. 241.)

(Syllabus.)

**Homicide—Shooting with Intent to Kill—Sufficiency of Evidence.**
In a prosecution for shooting another with intent to kill, evidence held sufficient to support the verdict and judgment of conviction.

Appeal from District Court, McCurtain County; Geo. S. March, Judge.

Albert Benson was convicted of assault with intent to kill, and he appeals. Affirmed.

Jeff D. McLendon, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

DOYLE, P. J.  Plaintiff in error, Albert Benson, was convicted on a charge of shooting with a shotgun one John Lane, with intent to kill the said Lane, and his punishment

fixed at imprisonment in the penitentiary for a period of six months. He has appealed from the judgment rendered upon such conviction, but there has been no appearance on his behalf in this court. The errors assigned question the sufficiency of the evidence to sustain the verdict.

It appears that the complaining witness, John Lane, and the defendant, Albert Benson, are negroes, and the shooting occurred in Shawneetown, McCurtain county, where the defendant conducted a store.

John Lane testified:

"My baby girl was having spasms; the defendant's dog had bit her on the arm; I went up there to kill that dog; I took my gun; I says, 'Cousin Albert, I did not come here to harm nothing but the dog;' he says, 'God damn it, go out and kill the dog;' I went out and shot the dog; the moment I shot he ran and got a single-barrel shotgun and shot me with buckshot in the leg; then he ran into the house and gets his automatic, and then he shot me in the neck and in the side; my little girl was at home when the dog bit her."

John Wesson testified:

"I heard John Lane say he was going to kill the dog for biting his child; Albert Benson told him not to kill the dog; it was best for him to go on home and let that dog alone; Lane said he was going to kill the dog, and Benson told him if nothing else would do to go ahead and kill him; the dog was out in the yard, and Lane went out and shot at him; when he shot the dog Benson shot him; then Lane asked me to go home with him; I told him I had my baby in the wagon, and I would go up there and tell my boy to wait until I got back; he walked on a piece and stopped; I told him to go on, 'I will overtake you;' just as I turned around Benson shot him twice with an automatic shotgun; at that time Lane had his gun in one hand down at his side."

Dr. L. H. Hill testified:

"I was called to dress the wounds of John Lane; I found that several bird shot entered the shoulder, one or two entered the face, and one entered his eye."

For the defense, John Craig testified:

"I was in the defendant's store and heard a shot outside; I went to the door and there was another shot; John Lane was out there with a Winchester, and he fired another shot at the dog, and missed the dog; then Albert Benson came to the door and asked him what he was doing, and told him to go on home and behave himself, and went back in the store and was waiting on some customers; then John Lane shot the dog, and Benson jumped out the door and shot him in the leg. John Lane threw the gun right towards him, and he jumped off the porch and out of the way, and went in the house; John Lane was back of the store, and Benson shot twice; I guess it was him; I did not see him; I saw John Lane throw up his hands and drop his gun; then he crawled through the fence and went off a little ways and fell down."

As a witness in his own behalf, the defendant testified:

"I run a store and farm at Shawneetown; John Lane came around the house to the well, and he called the dog and fired two shots; I could see him out of the window; I walked to the door and said, 'You ought to be ashamed of yourself, the way you are doing shooting in this yard, trying to make folks think that you run the county and everything else'; I made that remark and went back in the house; he fired another shot at the dog, and said, 'You black son of a bitch, you come out and take your medicine; you understand me?' Well, I walks to the door; he was standing with his gun this way, so I just picked up my gun and I jumped quick and shot; he went around the house and fell; then he came back towards the store again, and he shoved his gun out; I just reached back and got that automatic, and made two shots, and that settled it."

While the defendant is not represented in this court, we have carefully examined the record, both as to the law and the

evidence. It is obvious that the case was one for the consideration of the jury, and, finding no error prejudicial to the substantial rights of the defendant, the judgment of the lower court is affirmed.

MATSON and BESSEY, JJ., concur.